# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 08-cv-00662-REB-MEH

KEYMARK ENTERPRISES, LLC, a Delaware limited liability company,

    Plaintiff,

v.

EAGLE METAL PRODUCTS, a Texas corporation

    Defendant.

## ORDER GRANTING MOTION TO TRANSFER

**Blackburn, J.**

This matter is before me on the following motions: (1) **Defendant's Motion To Dismiss or Transfer To the Northern District of Texas, Dallas Division, and Brief in Support** [#37], filed June 4, 2008; and (2) **Defendant V.P.T, Inc.'s Unopposed Motion for Expedited Ruling on Defendant's Motion To Transfer Venue (Docket Entry # 38)** [#107], filed October 9, 2008.  The plaintiff filed a response to the motion to transfer venue, and the defendant filed a reply in support of that motion.  I grant the motion to transfer, and I deny the motion for expedited ruling as moot.

## I. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship).

## II. FACTS

In August, 2004, the parties entered into a written agreement concerning the development and licensing of specialized engineering software.  Plaintiff, Keymark

Enterprises, LLC (Keymark), was to develop the software under the terms of the agreement. The software relates to the engineering of steel connector plates that are manufactured by defendant, V.P.T., Inc., d/b/a/ Eagle Metal Products (Eagle). The connector plates are used in the construction of wood trusses. The agreement also provides terms on which Eagle agreed to sell and ship steel connector plates to Keymark. Keymark is located in Colorado and performed the software development work in Colorado. Eagle is located in Texas and manufactures the steel connector plates in Texas.

Eagle claims that Keymark failed to complete the software development project by the promised completion date of February, 2006. Eagle says efforts have been made to accommodate Keymark's needs and to facilitate the completion of the software, even though the completion date specified in the agreement has passed. To date, according to Eagle, the software project remains incomplete. Eagle says the software currently is functional, but it does not include all of the components that are required under the agreement. Currently, Keymark provides Eagle access to the allegedly incomplete software on a server computer hosted by Keymark.

In the summer of 2007, according to Keymark, Keymark complained to Eagle that Eagle was overcharging Keymark for connector plates purchased by Keymark. Keymark says Eagle then refunded some money to Keymark. Keymark claims that in early 2008, Eagle continued to deliver orders of connector plates to Keymark that were substantially short.

On March 25, 2007, Keymark's president, Keith Dietzen, sent an e-mail to Eagle's president, Tom Whatley. Dietzen, speaking for Keymark, noted that Eagle had expressed frustration "about joint software development efforts and direction." *Motion*

2

*To Transfer* [#37], filed June 4, 2008, Exhibit 5. Dietzen suggested that Keymark and Eagle review the current contract and development process and "throw it all on the table for discussion." *Id*. On March 31, 2007, Keymark sent a letter to Eagle asserting that Eagle had breached the agreement between Keymark and Eagle. *Id.*, Exhibit 6. Keymark offered to negotiate a settlement, but said it would terminate the agreement if a settlement could not be reached. *Id*. On April 1, 2008, Keymark filed the present lawsuit against Eagle, but did not notify Eagle of the filing. In this case, the Colorado case, Keymark seeks a declaratory judgment declaring, *inter alia*, that it is excused from further performance under the agreement. Keymark asserts also a claim for breach of contract.

On Thursday, April 3, 2008, Dietzen, Keymark's president, sent an e-mail to Whatley, Eagle's president. *Id.*, Exhibit 7. Dietzen said:

> I know you have been trying to each me but I have been tied up and am now walking out the door for a church meeting.
>
> Let's plan on meeting Monday [April 7, 2008]. I will compose an email late this evening with my thoughts. I hope to find time to talk tomorrow, but I think my email will say it all in preparation for a Monday meeting.

Whatley traveled from Texas to Boulder, Colorado, for the Monday meeting on April 7, 2008. At the meeting, Dietzen presented Whatley with a sheet of proposed terms to settle the dispute. *Id.*, Exhibit 13. Among the terms proposed by Dietzen was a term providing that "Keymark will agree to take no legal action towards Eagle." *Id*. Dietzen did not inform Whatley that the present lawsuit had been filed. The meeting was short, although the parties disagree about which of the parties cut the meeting short.

On the same day, April 7, 2008, Eagle filed suit against Keymark in Texas state court. Eagle alleged multiple breaches of contract and obtained an *ex parte* restraining

3

order which prevented Keymark from terminating Eagle's access to the software that had been developed by Keymark. The following day, April 8, 2008, Eagle served process on Keymark in the Texas case.  Six days later, on April 14, 2008, Keymark served process on Eagle in the Colorado case.  Keymark removed the Texas case from state court to the United States District Court for the Northern District of Texas, Dallas Division on April 15, 2008.  Eagle asks that this case, the Colorado case, be transferred to the United States District Court for the Northern District of Texas, Dallas Division.

### III. STANDARD OF REVIEW

Section 1404(a) contemplates that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  A district court is vested with considerable discretion in determining whether transfer is appropriate. **Chrysler Credit Corp. v. Country Chrysler, Inc.**, 928 F.2d 1509, 1515 (10th Cir. 1991).  Factors that bear on the analysis include:

> the plaintiff's choice of forum; the accessibility of witnesses
> and other sources of proof, including the availability of
> compulsory process to insure attendance of witnesses; the
> cost of making the necessary proof; questions as to the
> enforceability of a judgment if one is obtained; relative
> advantages and obstacles to a fair trial; difficulties that may
> arise from congested dockets; the possibility of the existence
> of questions arising in the area of conflict of laws; the
> advantage of having a local court determine questions of
> local law; and, all other considerations of a practical nature
> that make a trial easy, expeditious and economical.

*Id*. at 1516 (quoting **Texas Gulf Sulphur Co. v. Ritter**, 371 F.2d 145, 147 (10th Cir. 1967)).  The movant bears the burden of establishing that the existing forum is inconvenient. *Id*. at 1515.  This is a heavy burden, **Texas Gulf Sulphur Co.**, 371 F.2d at 148, "'and unless the balance is strongly in favor of the movant the plaintiff's choice of

4

forum should rarely be disturbed,'" ***Scheidt v. Klein***, 956 F.2d 963, 965 (10th Cir. 1992). ***See also Cargill Inc. v. Prudential Insurance Co. of America***, 920 F.Supp. 144, 146 (D. Colo. 1996).

## IV. ANALYSIS

**A. First-To-File Rule**: The first-to-file rule provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." ***Cessna Aircraft Co. v. Brown***, 348 F.2d 689, 692 (10th Cir. 1965). Again, Keymark filed the present case on April 1, 2008, and Eagle filed the Texas case on April 7, 2008.

> This first-filed rule is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply.

***U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.***, 920 F.2d 487, 488 -489 (8th Cir. 1990) (quotations and citations omitted). The first-to-file rule carries substantially less weight in the analysis when the plaintiff in the first-filed action was able to file first only because it misled the filer of the second-filed action about the plaintiff's intentions to file suit in order to gain the advantages of filing first. ***See, e.g., Mission Ins. Co. v. Puritan Fashions Corp.***, 706 F.2d 599, 602 (5th Cir. 1983).

In the present case, I find that Keymark misled Eagle about Keymark's intentions to file suit and about the fact that Keymark had filed suit. In its March 31, 2007, letter to Eagle, Keymark asserted that Eagle had breached the agreement between Keymark and Eagle, and Keymark offered to negotiate a settlement. The next day, April 1, 2008, Keymark filed the present suit, but did not notify Eagle of the filing. On April 3, 2008,

5

Dietzen sent an e-mail, on behalf of Keymark, to Whatley, Eagle's president, seeking to arrange a meeting to discuss resolution of the dispute.  Again, Keymark did not notify Eagle of this pending lawsuit.  Dietzen and Whatley met face to face on April 7, 2008, to discuss settlement, but Keymark again did not notify Eagle of the pending lawsuit.  Keymark did not reveal the filing of the present suit to Eagle until April 14, 2008.   These circumstances demonstrate that Keymark sought to mislead Eagle about the filing of the first suit in order to gain the advantage of filing first, and Keymark maintained this secrecy for 14 days.  This factor weighs heavily against Keymark in the interest of justice calculus.

Keymark notes that Eagle's president did not reveal to Keymark the filing of the Texas suit at the April 7, 2008, meeting between Keymark and Eagle.  Assuming that is true, I note that Eagle revealed the filing of the Texas suit to Keymark the following day, April 8, 2008.  If Eagle sought to conceal the filing of the Texas suit on April 7, 2008, that concealment was imponderous, lasting only for a day.

**B.  Plaintiff's Choice of Forum**: Generally, a plaintiff's choice of forum carries some weight in a venue analysis.  Considering Keymark's fourteen day delay in disclosing to Eagle that Keymark had filed the Colorado suit against Eagle, I conclude that the choice of forum factor carries substantially diminished weight.

**C.  Accessibility of Witnesses and Other Proof**: In analyzing the accessibility of witnesses, the convenience of non-party witnesses weighs more heavily than the convenience of parties and their employees.  ***See, e.g., Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.***, 512 F. Supp. 2d 1039, 1043 (S.D. Tex. 2007).  Having reviewed the parties' assessments of this factor, I conclude that this factor weighs equiponderantly for each of the parties and each of the two forums.

**D. Advantage of Having Local Court Determine Questions of Local Law**:

The contract between Keymark and Eagle provides that Texas law controls. Questions of Texas law will predominate in this case. There is a relative advantage in having a Texas court determine questions of Texas law. This factor weighs in favor of transfer.

**E. Docket Congestion**: The evidence cited by Eagle concerning docket congestion in the Texas court indicates that a typical civil case may come to trial slightly faster in the Texas court than in this court. Generally, I conclude that the weight of this factor tips slightly in favor of the Texas forum.

**F. Other Factors**: Generally, I agree with the parties that the other factors relevant to a § 1404 analysis are neutral as applied to this case.

## V. CONCLUSION & ORDERS

Keymark's apparent deception in failing to disclose the filing of this suit to Eagle weighs in favor of transfer, dilutes substantially the weight of the plaintiff's choice of forum, and should not be minimized when considering the interests of justice. Questions of Texas law will predominate in this case, and there is substantial benefit in having Texas court decide questions of Texas law. The other factors in the § 1404 analysis are either neutral or equiponderant. On balance, I conclude that the interests of justice and the relevant factors weigh strongly in favor of transfer to the district where the parallel action is pending, the United States District Court for the Northern District of Texas, Dallas Division.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendant's Motion To Dismiss or Transfer To the Northern District of Texas, Dallas Division, and Brief in Support** [#37], filed June 4, 2008, is **GRANTED**;

2. That under 28 U.S.C. § 1404, this case is **TRANSFERRED** to the United States District Court for the Northern District of Texas, Dallas Division; and

3. That **Defendant V.P.T, Inc.'s Unopposed Motion for Expedited Ruling on Defendant's Motion To Transfer Venue (Docket Entry # 38)** [#107], filed October 9, 2008, is **DENIED** as moot.

Dated October 30, 2008, at Denver, Colorado.

**BY THE COURT:**

<u>s/ Robert E. Blackburn</u>
**Robert E. Blackburn**
**United States District Judge**